**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **JEFFREY ASBERRY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Case No. CIV-21-396-SM** |
| **KILOLO KIJAKAZI,** | ) | |
| **Acting Commissioner of Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Jeffrey Asberry (Plaintiff) seeks judicial review of the Commissioner of

Social Security's final decision that he was not "disabled" under the Social

Security Act. *See* 42 U.S.C. §§ 405(g), 423(d)(1)(A). The parties have consented

to the undersigned for proceedings consistent with 28 U.S.C. § 636(c). Docs. 13,

14.

Plaintiff asks this Court to reverse the Commissioner's decision and to

remand the case for further proceedings, arguing the Administrative Law

Judge (ALJ) erred in his residual functional capacity[1] (RFC) analysis and

failed to sua sponte consider a closed period of disability. Doc. 15, at 4-24. After

a careful review of the record (AR), the parties' briefs, and the relevant

---

[1]    Residual functional capacity "is the most [a claimant] can still do despite
[a claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1).

authority, the Court affirms the Commissioner's decision. *See* 42 U.S.C. § 405(g).[2]

## I.     Administrative determination.

### A.     Disability standard.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just [the claimant's] underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

### B.     Burden of proof.

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that he can no longer engage in his prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the Commissioner to

---

[2]     Citations to the parties' pleadings and attached exhibits will refer to this Court's CM/ECF pagination. Citations to the AR will refer to its original pagination.

show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy.

### C.    Relevant findings.

### 1.    The ALJ's findings.

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis to decide whether Plaintiff was disabled during the relevant timeframe.[3] AR 10-27; *see* 20 C.F.R. § 404.1520(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step process). The ALJ found Plaintiff:

(1)    had not engaged in substantial gainful activity since September 17, 2014, the alleged onset date;

(2)    had the following severe impairments: chronic kidney disease; obesity; hypertension; a history of prostate cancer; and status-post diverticular bleed with surgical repair;

(3)    had no impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(4)    had the RFC to perform medium work in that he can lift and carry fifty pounds occasionally and twenty-five pounds frequently, can sit for about six hours during an eight-hour workday, can stand and walk for about six hours during an eight-hour workday, and can frequently climb, balance, stoop, kneel, crouch, and crawl;

---

[3]    An ALJ initially denied Plaintiff's claim for benefits in a decision issued March 28, 2018. AR 198-206. But the Appeals Council remanded this case for a hearing before "a different [ALJ]" after Plaintiff's "representative raised a challenge to the Appointments Clause of the Constitution." *Id.* at 213.

(5)     was capable of performing his past relevant work as a machinist as that job is generally performed in the national economy; and so,

(6)     had not been under a disability from September 17, 2014, through June 8, 2020.

AR 13-27.

### 2.     Appeals Council's findings.

The Social Security Administration's Appeals Council denied Plaintiff's request for review, *see id.* at 1-6, making the ALJ's decision "the Commissioner's final decision for [judicial] review." *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

## II.     Judicial review of the Commissioner's final decision.

### A.     Review standard.

The Court reviews the Commissioner's final decision to determine "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084; *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."). A decision is not based on substantial evidence "if it is overwhelmed by other

evidence in the record." *Wall*, 561 F.3d at 1052. The Court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013).

**B.    Issues for judicial review.**

Plaintiff asserts (1) the ALJ's RCF is "contrary to law and not supported by substantial evidence" (Doc. 15, at 4-22); and (2) the ALJ should have "at the very least" considered a closed period of disability between September 2014 and October 2015 (*id.* at 23-24). The Court finds no basis for reversal.

**C.    Plaintiff's relevant medical history.**

Plaintiff is a high school graduate and military veteran with vocational training. AR 41. His past work experience is as a machinist. *Id.* at 28, 47. He claims he became disabled in September 2014. *Id.* at 10, 31.

The record shows that, on September 17, 2014, Plaintiff sought care in the emergency room of Mercy Hospital in Oklahoma City for rectal bleeding. *Id.* at 649. Doctors admitted Plaintiff to the hospital that same day to treat "[a]cute lower GI bleeding." *Id.* at 654-55. On September 18, 2014, Dr. Michael O. Riggs performed an exploratory laparotomy with right hemicolectomy and mobilization of splenic flexure to treat Plaintiff's lower gastrointestinal bleeding from splenic flexure diverticula and sigmoid colon. *Id.* at 630, 685-87. Post-operative complications required Dr. Riggs to perform a second surgery

on October 8, 2014, to repair a pelvic abscess, and a third surgery on October 15, 2014, to repair a bowel leak. *Id.* at 626, 628, 688-92. On October 31, 2014, doctors released Plaintiff from the hospital in "improving condition." *Id.* at 694.

Plaintiff lost considerable weight during his hospitalization and required a temporary colostomy. *Id.* at 1131. His condition steadily improved though and, by July 2015, his primary care physician, Dr. Steven A. Burner, observed that Plaintiff had regained a significant amount of weight and Plaintiff told him he was feeling "much stronger" and his appetite had improved. *Id.* at 1137, 1139, 1146, 1152, 1157, 1159, 1168. During a July 30, 2015 office visit with Nephrologist Dr. Kaelin C. Merveldt at Oklahoma Kidney Care, Dr. Merveldt observed that Plaintiff "looked great" after successful drug therapy for acute renal failure. *Id.* at 610-14; *see id.* at 1343-44. Plaintiff reported to Dr. Merveldt that he had gained twenty-five pounds and that he felt "great." *Id.* at 610.

On August 12, 2015, Dr. Scott surgically removed Plaintiff's colostomy. *Id.* at 624. When Dr. Scott released Plaintiff from the hospital on August 22, 2015, he noted that Plaintiff's bowels were "functioning well" and that Plaintiff was "eating, stooling, and urinating without difficulty." *Id.* at 622, 624.

In the ensuing months Plaintiff had unremarkable office visits with Dr. Burner where Plaintiff reported he was regaining weight, was feeling better and stronger and was exercising. *Id.* at 1170, 1175. At a follow-up appointment

with his oncologist Dr. Christopher L. Thompson on December 9, 2015,[4] Plaintiff was feeling better and had improved energy. *Id.* at 1290. He told Dr. Thompson that he was "enjoying retirement and working on art [and] boxing training." *Id.* In another follow-up appointment on June 6, 2016, Plaintiff reported he felt "well with great energy and he [was] working out a lot." *Id.* at 1397; *see id.* at 1421.

Plaintiff was involved in a motor vehicle accident on September 30, 2016. *Id.* at 1449-50, 1466-68. Plaintiff had resulting neck, back, and hip pain with headaches. *Id.* He sought chiropractic care at Cimarron Chiropractic in October 2016. *Id.* at 1634-40. Plaintiff began treatment with Stuart R. Hershberger, D.C., and, by January 2017, he reported that Plaintiff's headaches had improved in number and severity, his arm and leg symptoms had disappeared, his neck was stiff and sore, and his shoulder was a little sore but his low back had improved. *Id.* at 1651. Plaintiff's range of motion had improved and he was tolerating the treatment well. *Id.* A January 2017 image of Plaintiff's cervical spine showed no acute bony abnormality or fracture and only a minimal slippage of C4 onto C5. *Id.* at 1902-03. By March 24, 2017, Dr. Hershberger released Plaintiff from care "as guarded" and to return on an as

---

[4]        Plaintiff was treated for prostate cancer in 2010. *Id.* at 1290.

needed basis. *Id.* at 1901. Plaintiff's headaches had improved to "minimal," his range of motion was "a lot better without pain," and his "low back, shoulders, etcetera" were "doing better without pain." *Id.*

Plaintiff had no other documented visits with his chiropractor. But Dr. Hershberger provided a letter to Plaintiff in April 2020 stating that, although he had released Plaintiff from treatment in January 2017, Plaintiff "continues to have periodic exacerbation which render him totally dysfunctional, i.e. unable to do physical activity, headaches equivalent to migraines, etc." *Id.* at 1894. He stated that Plaintiff's "exacerbation[]s are intense, frequent, and unpredictable resulting in [Plaintiff] not having a regular schedule in his daily life whether it is with regard to employment or daily functioning." *Id.*

On March 1, 2017, Dr. Elizabeth Hooper performed an outpatient hernia repair on Plaintiff. *Id.* at 1504, 1506-07. Plaintiff tolerated the surgery well and, when released, Dr. Hooper restricted him from lifting greater than twenty pounds for two weeks. *Id.* at 1510. At his two-week follow-up appointment, Dr. Hooper observed Plaintiff had done well postoperatively and had minimal discomfort at the surgical site. *Id.* at 1624. He had been tolerating a regular diet and had normal bowel function. *Id.* She instructed Plaintiff to avoid any heavy lifting or straining until four to six weeks past the operation date. *Id.* at 1625.

Thereafter, Plaintiff's visits with Dr. Burner were unremarkable with Plaintiff complaining of slight headaches intermittently and tenderness around his healed surgical incisions, no recurrent hernia, and routine monitoring of his blood pressure and kidney function. *Id.* at 1671-72, 1696-99, 1729-30, 1751-52, 1774-75, 1793-94, 1839-40, 1870-72. Plaintiff continued his exercise regimen of four to five times a week with no decrease in exercise tolerance. *Id.* at 1671, 1696, 1699, 1729, 1751, 1774, 1839.

Images of Plaintiff's cervical spine taken in January 2020 revealed minimal degenerative changes and an image of his head revealed no acute intracranial abnormalities. *Id.* at 1884, 1888.

Plaintiff saw Dr. Merveldt one time in 2018, two times in 2019, and one time in 2020. *Id.* at 1914, 1937. Dr. Merveldt noted that Plaintiff had gained back his weight, his serum creatinine number had improved and was stable and he was "doing well." *Id.* Dr. Merveldt ordered an ultrasound of Plaintiff's kidneys on September 4, 2018, which showed normal echogenicity in both kidneys, no hydronephrosis, and no visualized abnormalities. *Id.* at 1965.

Dr. Merveldt wrote a letter on May 6, 2019, stating that she had treated Plaintiff in June 2015 for acute renal failure. *Id.* at 1661. Dr. Merveldt stated that, "at that time," Plaintiff had been "unable to work" due to his

malnourished and weakened condition. *Id.* Dr. Merveldt made the same statements in a letter dated March 31, 2020. *Id.* at 1905.

### D.   Evidence of Plaintiff's activities of daily living.

Plaintiff's wife completed a function report concerning Plaintiff's activities of daily living. *Id.* at 507-514. She stated Plaintiff performs "minimal" tasks during the day but has no problems performing his personal hygiene, feeding himself, or taking medication, and he needs no special reminders to do so. *Id.* at 508-09. He has "no limits on household chores which do not require heavy lifting [and] bending" and needs no encouragement to complete those tasks. *Id.* at 509. He has "occasional pain in his back/neck area" which affects his sleep, and his ability to lift, squat, and bend has been impacted by his health issues, but she did not state how much. *Id.* at 508, 512. She reported Plaintiff can walk, drive, ride in a car, shop, and go out alone. *Id.* at 510. He does not use any assistive devices to get around and he takes no medications for his conditions. *Id.* at 513-14. He has no problems handling money or bank accounts, and he pays bills. *Id.* at 511. He enjoys drawing. *Id.* He gets along with others, and he socializes with others over the phone and in person. *Id.* 511-12. He handles stress and changes in his routine moderately well. *Id.* at 513.

State Agency Consultant Dr. William W. Bell called Plaintiff's wife in January 2016 to discuss Plaintiff's activities of daily living. *Id.* at 176, 180. Dr. Bell reported that she told him Plaintiff was "out at the gym working out." *Id.* at 180.

At a hearing the ALJ conducted on May 7, 2020, Plaintiff testified that he sometimes has backaches and a little confusion when he drives far distances but, otherwise he is "pretty okay" to drive. *Id.* at 42. He has stomach pains from his surgeries which deter him from picking up things. *Id.* at 43-44. He has trouble sleeping. *Id.* at 43. He takes medication for high blood pressure. *Id.* He sometimes has headaches but he only takes medication for them if they are "pretty severe." He can frequently "pick up" fifty pounds and "[m]ove it around a little bit" during the day. *Id.* at 45. And he sometimes sleeps for a few hours during the day depending on what he has done or how tired he is or if he is "not feeling good." *Id.* at 46.

### E.    Analysis.

#### 1.    Substantial evidence shows the ALJ considered all of Plaintiff's impairments in his formulation of the RFC.

The ALJ explained his RFC assessment for medium exertion as follows:

> Based on the foregoing [recitation of evidence and medical opinions], the undersigned finds the claimant has the above residual functioning capacity assessment, which is supported by

the claimant's extensive activities of daily living and the medical evidence of record.

More specifically, the undersigned has considered the claimant's cardiovascular issues, as well as residual symptoms related to his additional physical impairments when taking into account the claimant's residual functional capacity and has restricted him to the medium exertional range limiting the amount of exertion or weight lifted or carried due to the medical evidence of record. Further limitations were also afforded to the claimant limiting his ability to climb, balance, stoop, kneel, crouch, and crawl, also due to the level of exertion required by such tasks, as well as the evidence in the record. Such limitations are also consistent with the claimant's activities of daily living, the medical evidence of record, and the claimant's own indication that he is able to frequently lift and carry 50 pounds.

In brief summation, although the undersigned acknowledges that the claimant's impairments do affect his residual functional capacity, such limitations do not wholly erode his ability to perform his past relevant work . . . .

AR 26-27.

Plaintiff contends the ALJ erred in his finding that Plaintiff's self-described functional limitations were not consistent with or supported by the record as a whole because the ALJ failed to properly assess his symptoms as required by 20 C.F.R. § 404.1529. *See* Doc. 15, at 7. Plaintiff admits the ALJ found he had medically determinable impairments that could reasonably be expected to produce some of his symptoms. *Id.* (citing AR 24); *see* SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017) ("First, we must consider whether there is an underlying medically determinable physical or mental impairment(s)

that could reasonably be expected to produce an individual's symptoms, such as pain.").[5] But he disagrees with the ALJ's determination that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." AR 24. Plaintiff argues the ALJ wrongfully determined this because: (1) he improperly rejected medical opinions from his treating sources;[6] and (2) he disregarded "numerous" § 404.1529(c) factors "weighing in [his] favor," along with his "stellar work history." *Id.* at 8. The Court considers and rejects each argument.

### a.    Applicable law.

An ALJ is tasked with determining whether a claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms are consistent with the objective medical evidence, statements from medical sources, or any other sources who might have information about the claimant's

---

[5]    SSR 16-3p applies to decisions on or after March 28, 2016, and superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996). *See* SSR 16-3p, 2017 WL 5180304, at *1. SSR 16-3p eliminated the use of the term "credibility" to "clarify that subjective symptom evaluation is not an examination of [a claimant's] character." *Id.* at *2.

[6]    The guidelines for evaluating opinion evidence found in 20 C.F.R. § 404.1527 apply here because Plaintiff filed his benefits claim before March 27, 2017.

symptoms. 20 C.F.R. § 404.1529; *see* SSR 16-3p, 2017 WL 5180304, at *6 ("If we cannot make a disability determination or decision that is fully favorable based solely on objective medical evidence, then we carefully consider other evidence in the record in reaching a conclusion about the intensity, persistence, and limiting effects of an individual's symptoms. Other evidence that we will consider includes statements from the individual, medical sources, and any other sources that might have information about the individual's symptoms, including agency personnel, as well as the factors set forth in our regulations.").

Additional factors the ALJ considers are: (1) Plaintiff's daily activities; (2) the location, duration, frequency, and intensity of her pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of medication; (5) treatment, other than medication, Plaintiff has received; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning functional limitations and restrictions. 20 C.F.R. § 404.1529(c)(3); *see also* SSR 16-3p, 2017 WL 5180304, at *7-8. Statements the ALJ finds inconsistent with all the evidence will lead to a determination that "the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities." SSR 16-3p, 2017 WL 5180304, at *8.

14

Consistency findings are "peculiarly the province of the finder of fact," and courts should "not upset such determinations when supported by substantial evidence." *See Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). Provided the ALJ links his assessment of Plaintiff's consistency to specific evidence in the record, this Court affords substantial deference to the ALJ's determination. *See. e.g.*, *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012) ("But so long as the ALJ 'sets forth the specific evidence he relies on in evaluating the claimant's credibility,' he need not make a 'formalistic factor-by-factor recitation of the evidence.'" (quoting *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000))). "[C]ommon sense, not technical perfection," is this Court's guide. *Id.*

> **b.    The ALJ properly assigned little weight to Dr. Merveldt's and Dr. Hershberger's statements.**

"Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity" of a claimant's impairment, "including their symptoms, diagnosis and prognosis," what they "can still do despite their impairments," and their "physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). The applicable regulations governing the consideration of medical opinions distinguish between "treating" physicians,

"examining" physicians, and "nonexamining" (or "consulting") physicians. *See id.* § 404.1527(c). For an ALJ to evaluate and assign weight to a medical opinion, the issuing physician must provide "judgment" about the nature and severity of a claimant's limitations or "information" about the activities he or she could still perform despite these limitations. *Cowan*, 552 F.3d at 1189.

An ALJ must "give consideration to all the medical opinions in the record [and] discuss the weight he assigns to such opinions." *Keyes-Zachary*, 695 F.3d at 1161. If a treating source's opinion on the nature and severity of a claimant's impairments is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record,'" then an ALJ must give it controlling weight. *Tuttle v. Comm'r*, 853 F. App'x 246, 249 (10th Cir. 2021) (quoting 20 C.F.R. § 404.1527(c)(2) (internal alteration omitted)). But if a treating source opinion is not entitled to controlling weight, then the ALJ should determine whether it is entitled to any weight by considering:

> (1) [T]he length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Krauser*, 638 F.3d at 1331; *see Tuttle*, 853 F. App'x at 249 n.3. That said, so long as the ALJ provides a well-reasoned discussion, the failure to "explicitly discuss" all the factors "does not prevent [the] court from according [the ALJ's] decision meaningful review." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). The ALJ must simply provide "'good reasons' for the weight assigned." *Tuttle*, 853 F. App'x at 249 (quoting *Oldham*, 509 F.3d at 1258).

### i.   Dr. Merveldt's statements.

The Court finds the ALJ's discussion of Dr. Merveldt's statements was sufficient for the Court's review:

> Consideration has been given for the May 6, 2019, and March 31, 2020 medical statements provided by Dr. Merveldt, discussed in greater detail above (Ex. 18F; and 20F, P. 13). As a threshold matter, Dr. Merveldt is a medical provider for the claimant and, as such, is privy to unique and detailed knowledge as to the claimant's prognosis, responses to treatment, and functional abilities. However, and of import, *Dr. Merveldt did not provide any form of assessment of the claimant's limitations and how they interfered with his ability to perform work activity.* Alternatively, Dr. Merveldt simply provided a blanket statement that the claimant was "unable to work at that time" (*Id.*). In addition, Dr. Merveldt did not outline when the claimant became unable to work again, or to what degree the claimant remained limited. Further, *Dr. Merveldt's own treatment records* from July 30, 2015, October 9, 2018, April 9, 2019, and October 22, 2019, *are at odds with the conclusion that the claimant remained disabled and unable to work.* Furthermore, the same is also inconsistent with the extended medical treatment record and the claimant's activities of daily living. Accordingly, the

> undersigned affords the May 6, 2019 and March 31, 2020
> opinions of Dr. Merveldt little weight.

AR 25 (emphasis added).

Plaintiff argues that the ALJ gave "no obvious consideration" that Dr. Merveldt's opinion was based on "actual examinations" of Plaintiff or that she was a specialist in her field which should have garnered more weight. Doc. 15, at 12. Plaintiff acknowledges but quickly discounts the ALJ's determination that Dr. Merveldt's opinion was neither consistent with nor supported by her records or Plaintiff's medical history. *Id.* at 12-13 & n.5. He then asks the Court to reweigh the evidence to find that, even though his symptoms have "waxed and waned" over the years, he "cannot perform sustained work activity and is disabled as a matter of law." *Id.* at 10, 13-17. The Court, of course, cannot engage in a reweighing of the evidence. *Newbold*, 718 F.3d at 1262.

The Court finds no error in the ALJ's determination that Dr. Merveldt's opinion was entitled to little weight. The ALJ conducted an exhaustive review of Plaintiff's applicable medical history–including Dr. Merveldt's examinations of Plaintiff and test results. AR 15-22, 25. He also acknowledged that Dr. Merveldt had treated Plaintiff and was "privy to unique and detailed knowledge" of his "prognosis, responses to treatment, and functional abilities." *Id.* at 25. He then correctly noted that Dr. Merveldt's statements were not a

clear assessment of Plaintiff's ongoing physical limitations or his ability to perform work activity. *Id.*; *see Cowan*, 552 F.3d at 1189 (noting that the treating doctor's statement was not a medical opinion because it "did not contain [the doctor's] judgment about the nature and severity of [the Plaintiff's] physical limitations, or any information about what activities [the Plaintiff] could still perform").

Plaintiff argues that Dr. Merveldt opined Plaintiff's chronic kidney disease made him too weak and malnourished to work. Doc. 15, at 9-10. But, as the ALJ articulated, any such opinion, at least past 2015, was inconsistent both with Dr. Merveldt's treatment records, Plaintiff's extended medical treatment record and the claimant's activities of daily living. AR 25. He explained this determination by citing to the record and after considering Dr. Merveldt's longitudinal treatment relationship with Plaintiff along with the other record evidence. *Id.*; *see* 20 C.F.R. § 404.1527(c). And the Court's review of the record, as outlined above, supports the ALJ's findings that Dr. Merveldt's statement, as Plaintiff interprets it, is inconsistent with Dr. Merveldt's records and the overall record. Because the ALJ explained the weight he gave to Dr. Merveldt's statements, and the evidence supports the ALJ's findings, the Court cannot substitute its judgment for his findings. *See, e.g.*, *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2001) (concluding that the reviewing court's

analysis ends where "the record contains substantial support for the ALJ's decision" of the weight given to a treating physician, because it "may neither reweigh the evidence nor substitute [its] judgment for the Commissioner's" (internal quotation marks, citation, and alternations omitted)); *see also Raymond v. Astrue,* 621 F.3d 1269, 1272 (10th Cir. 2009) (affirming the ALJ's decision to give treating physician's opinion little weight because it was "inconsistent with other medical evidence").

### ii.    Dr. Hershberger's statement.

Dr. Hershberger, a chiropractor, is not considered an acceptable medical source. *Frantz v. Astrue*, 509 F.3d 1299, 1301 (10th Cir. 2007). The factors in § 404.1527(c) "explicitly apply only to the evaluation of medical opinions from acceptable medical sources." *Fulton v. Colvin*, 631 F. App'x 498, 503 (10th Cir. 2015) (internal quotation marks omitted). But they do "represent basic principles that apply to the consideration of all opinions from medical sources who are not acceptable medical sources." *Id.* Not every factor, however, may apply and the ALJ is "not required to expressly discuss those factors in his decision." *Id.* For a nonacceptable medical source, the ALJ's decision is sufficient if it permits the reviewer to "'follow the adjudicator's reasoning.'" *Keyes-Zachary*, 695 F.3d at 1164 (quoting SSR 06-03p, 2006 WL 2329939, at *6).

The Court finds the ALJ's discussion of Dr. Hershberger's statement was

sufficient for the Court to follow his reasoning:

> Consideration has been given to the April 15, 2020 statement
> provided by Dr. Hershberger, also discussed above (Ex. 20F, P. 2).
> As a threshold matter, *Dr. Hershberger did not provide any*
> *functional limitations in connection with his statements, aside from*
> *indicating that they are periodic and frequent. In addition, Dr.*
> *Hershberger's opinions are not consistent with the medical evidence*
> *of record, the claimant's very broad range of activities of daily*
> *living, or Dr. Hershberger's own treatment notations. They are also*
> *not supported by the medical evidence of record, or Dr.*
> *Hershberger's treatment history with the claimant.* More
> specifically, although Dr. Hershberger indicates that the claimant
> continued to experience "intense, frequent, and unpredictable"
> exacerbations of his symptoms, inclusive of headaches and
> physical limitations, his treatment record does not support this
> conclusion. More directly, during the claimant's most recent
> medical treatment with Dr. Hershberger, dated March 24, 2017,
> the claimant's headaches were remarked to be minimal currently
> and only occurring once or twice per week; his range of motion was
> better without pain; his lower back, shoulder, and etcetera were
> doing better without pain; his range of motion was within
> acceptable limits without pain in the cervical and lumbar; and,
> paraspinal musculature swelling was decreased and trigger points
> were improved (Ex. 20F, P. 9). Further, the claimant was
> remarked to be "tolerating the procedure well" at all 13
> interactions between Dr. Hershberger and the claimant of record,
> spanning November 18, 2016, through March 24, 2017 (Ex. 20F, P.
> 8 through 9). Finally, although Dr. Hershberger provided a
> statement on April 15, 2020, there is no record of a treatment
> interaction with the claimant subsequent to March 24, 2017,
> making his direct knowledge of the claimant's ongoing limitations
> of limited probative value. As such, the undersigned affords the
> April 15, 2020 statement of Dr. Hershberger little weight.

AR 26 (emphasis added).

Plaintiff complains the ALJ did not "identify" Dr. Hershberger by his treating relationship with Plaintiff and failed to give his opinion more weight because of it. Doc. 15, at 11. He also complains the ALJ gave "no obvious consideration" that Dr. Hershberger had examined him. *Id.* at 12. He then asks the Court to reweigh the evidence to find him disabled "due to unpredictable exacerbations of pain and fatigue" which prevent him from performing sustained work activity. *Id.* at 10, 13-16. The Court declines to do so.

The ALJ acknowledged Dr. Hershberger's treating relationship with Plaintiff and elaborated on the inconsistencies between Dr. Hershberger's statement and Dr. Hershberger's own treatment records as well as the record as a whole. AR 26. The ALJ also discussed that, while Dr. Hershberger had examined Plaintiff through March 2017, he had not treated Plaintiff for over three years when he penned his statement. *Id.* The Court finds the ALJ's analysis of Dr. Hershberger's statement and his finding that it was entitled to little weight sufficed under the applicable regulations. *See, e.g.*, *Paulsen v. Colvin*, 665 F. App'x 660, 666 (10th Cir. 2016) (holding ALJ's analysis of a nurse's "opinion under the regulations that apply to nonacceptable medical sources" sufficed because the court was able to "'follow the [ALJ's] reasoning.'" (quoting *Keyes-Zachary*, 695 F.3d at 1164)).

22

The Court finds no basis for reversal in the ALJ's treatment of Dr. Merveldt's and Dr. Hershberger's statements.[7]

> c.   **The ALJ reasonably evaluated Plaintiff's subjective complaints and his credibility/consistency.**

Plaintiff complains the ALJ failed to properly consider the credibility of his complaints of pain and other symptoms in connection with his reported daily activities, his reported complaints of fatigue, weakness, and dizziness, and his prior work record. Doc. 15, at 18-21 (citing 20 C.F.R. § 404.1529(c)). The ALJ found that Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence or Plaintiff's activities of daily living. AR 24. He explained:

> More specifically, although the claimant alleges disabling limitations as a result of his impairments, the same is not supported by the medical record and the claimant's reported activities of daily living. More specifically, within her function

---

[7]   Plaintiff also asserts that the ALJ, instead of rendering the RFC determination based on his "lay interpretation" of the medical evidence, should have "recontacted any of the sources for clarification, scheduled review of the record and testimony by a medical expert, or even arranged for a consultative examination, which was never done." Doc. 15, at 17. If Plaintiff is arguing that the evidence was too inconsistent for the ALJ to make a determination, this argument is waived for lack of development. *See Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994) (holding inadequately framed or developed "perfunctory complaints" are insufficient to invoke review). Further, "'the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record.'" *Watts v. Berryhill*, 705 F. App'x 759, 762 (10th Cir. 2017) (quoting *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)).

report, the claimant's wife reported a very broad range of activities of daily living with little limitations in the claimant's activities of daily living. In addition, periodically through the record the claimant reports that he has been exercising or working out most, and nearly all, days of the we[e]k. In addition, he reports that he lifts weights and performing cardio exercises. Furthermore, he specifically indicated that he was able to lift and carry 50 pounds frequently during the day. He also testified that he is able to drive a car and that he is able to perform simple math calculations. In brief summation, although the undersigned agrees that the claimant experiences some limitations as a result of his impairments, such limitations are not supported to the degree alleged by the claimant.

*Id.*

The Court finds that the ALJ set out the appropriate analysis, and cited evidence supporting his reasons for finding that Plaintiff's subjective complaints were not believable to the extent Plaintiff alleged. Plaintiff argues he was more limited in his activities of daily living because of his pain, weakness, and dizziness and he only worked out because his doctors told him to. Doc. 15, at 19-20. He also complains that his "perfect work history" should have held sway. *Id.* at 20-21. But the ALJ, as required, gave clear and specific reasons that were specifically linked to the evidence in the record. AR 24-26. *See Qualls*, 206 F.3d at 1372. He noted inconsistencies between Plaintiff's subjective statements and (i) his medical examinations, AR 15-24; (ii) his described activities of daily living both during the hearing and as he expressed them to his doctors, *id.* at 18-24; his wife's description of his activities of daily

living, *id.* at 23-24; and his longitudinal record of care describing Plaintiff's recovery of his strength, appetite, and stamina, *id.* at 15-27. While the ALJ did not mention Plaintiff's work history, he did state he considered the entire record before making his determination. *Id.* at 15. This was sufficient as the ALJ need not make a "formalistic factor-by-factor recitation of the evidence." *Qualls*, 206 F.3d at 1372. The Court finds no error in the ALJ's analysis of Plaintiff's subjective statements.

### d.    Conclusion.

The ALJ's conclusion that Plaintiff is capable of medium work with exertional limitations was based on all the relevant evidence, which does not support further limitations. Because substantial evidence supports this conclusion, Plaintiff did not meet his burden to show that his impairments prevent him from performing his past relevant work as a Machinist as it is generally performed. The Court, therefore, finds no basis for reversal.

### 2.    The ALJ did not err by failing to consider a closed period of disability.

Plaintiff asserts the ALJ should have considered whether he was disabled between September 2014 and October 2015 because of the "sheer volume of treatment" he received in that time-period. Doc. 15, at 23-24 (citing

20 C.F.R. § 404.1594 and *id.* § 404.1505).[8] He argues that, even though he later improved, he was surely disabled during this time because an employer would have no tolerance for him being off task during the workday or absent altogether. *Id.* at 23. The Court disagrees with Plaintiff's assertion.

A disability means "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a *continuous period* of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (emphasis added). Implicit in the ALJ's conclusion that Plaintiff was not disabled during the relevant time period is that Plaintiff was not entitled to a closed period of disability at any time during that same period.

While the record established that Plaintiff was hospitalized and going through post-surgical recovery beginning in mid-September 2014, he recovered within months with no work-related limitations by his doctors. AR 15-16. In June 2015, Plaintiff was successfully treated with medication for renal failure

---

[8]     "'In a 'closed period' case, the decision maker determines that a new applicant for disability benefits was disabled for a finite period of time which started and stopped prior to the date of his decision.'" *Tuttle*, 853 F. App'x at 249 (quoting *Shepherd v. Apfel*, 184 F.3d 1196, 1199 n.2 (10th Cir. 1999)).

and by July 30, 2015, he had regained twenty-five pounds and looked great. *Id.*
at 17.

Neither of these periods lasted for a continuous period of not less than
twelve months. Thus, Plaintiff has failed to establish the ALJ should have
considered a closed period of disability.

III.   **Conclusion.**

Based on the above, the Court affirms the Commissioner's decision.

**ENTERED** this 9th day of May, 2022.


SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE